**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FRESH SOURCE LLC,

        Plaintiff,

    v.

FUSION CONSULTING SERVICES,
d/b/a FUSION GROUP
COMPANY/FUSION INDIA,
SCANDICVISION TRADING FZ LLC,
DHRUV BHATNAGAR, and VIVEK
BHATNAGAR,

        Defendants.

Case No. 1:23-cv-02161

Judge John Robert Blakey

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Fresh Source LLC sues its former business partner, Fusion Consulting Services and its employees Dhruv Bhatnagar and Vivek Bhatnagar, alleging common-law fraud and civil conspiracy. [1]. Dhruv and Vivek move to dismiss the claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [15]; [26]. For the reasons explained below, this Court denies the Defendants' motions.

## I.    The Complaint's Allegations[1]

This lawsuit stems from the breakdown of a business relationship between Plaintiff and Fusion Consulting Services ("Fusion"). Plaintiff is an Illinois limited

---

[1] The Court draws the facts from Plaintiff's Complaint, [1], which will be taken as true for purposes of resolving the motion to dismiss. *See Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007).

liability company with its principal place of business in Illinois. [1] ¶ 3. Plaintiff's sole member, Manish Singh, resides in Illinois. *Id.* Plaintiff works in the durable home goods business. *See id.* ¶ 11. It sources home goods for sale to retail companies in the United States, the United Kingdom, and Germany. *See, e.g., id.* ¶ 11, 18, 37, 39. Fusion is incorporated under the laws of India and maintains its principal place of business there as well. *Id.* ¶ 5. Vivek and Dhruv, agents of Fusion, reside in India. *Id.* ¶¶ 8–9, 47, 66–67.

Sometime in 2020, Vivek posted a text message in a WhatsApp group chat about PPE products. *Id.* ¶ 10. Plaintiff's sole member, Singh, replied to the message. *Id.* ¶ 11. Vivek and Singh began communicating and their conversations progressed from PPE products to discussing the sourcing of home goods manufactured in India for sale to US-based retail entities. *Id.* ¶¶ 4, 11.

Following these various discussions, Plaintiff and Fusion reached a business agreement. *Id.* ¶¶ 13–14. On August 26, 2020, Plaintiff's Vice President of International Sales, Rick Levy, sent an email to Vivek memorializing the terms. *Id.* ¶ 13. Vivek accepted the terms via email on September 1, 2020. *Id.* ¶ 14. Under the agreement, Fusion would "oversee the production, order management, quality and deliveries" of Plaintiff's orders manufactured in India. *Id.* ¶ 13. Fusion also agreed to provide Plaintiff pre- and post-production samples of the goods prior to shipment so that Plaintiff could assess whether they met the requisite quality standards for Plaintiff's retailer customers, namely Aldi. *Id.* ¶¶ 16; *see* [1-1]. Aldi orders that

Fusion managed for Plaintiff would be shipped to Aldi USA's warehouse in Batavia, Illinois. [1] ¶¶ 2, 18. Fusion would also ship the product samples to Illinois. [18] at 6.

Once the agreement was signed, issues began to arise concerning the quality and deliverability of the products. [1] ¶ 17. The gravamen of the Complaint is that Vivek and Dhruv operated a "bait and switch" scheme to induce Plaintiff to place large orders and to obtain payment terms favorable to Fusion. *See id.* ¶¶ 17–36. Vivek and Dhruv offered "bait" in the form of high quality pre- and post-production samples. *See, e.g., id.* ¶ 18. After Plaintiff and Aldi approved the samples, however, Vivek and Dhruv executed a "switch," providing inferior products that were "entirely different" than the approved samples. *Id.* Vivek and Dhruv performed this "bait and "switch" for multiple of Plaintiff's orders, including the orders of Enamel Goods in November 2020, *id.* ¶ 21, Utility Storage Tins in June 2021, *id.* ¶¶ 29, 36, and Braided Utensils in May 2022, *id.* ¶¶ 46, 52. During this time, Dhruv and Vivek "routinely assured" Plaintiff of the quality of the products, and claimed that Fusion was managing, overseeing, and controlling its orders pursuant to their agreement. *Id.* ¶¶ 67–68. After receiving these deficient products, Aldi cancelled many of Plaintiff's orders and Aldi USA terminated their business relationship, which led to significant monetary losses for Plaintiff. *See, e.g., id.* ¶¶ 19, 21, 24; [1-4]. This lawsuit followed.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a case as to any party over whom it lacks personal jurisdiction. A complaint need not include facts alleging personal jurisdiction, but, once the defendant moves to dismiss the

complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction exists. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When, as here, a court rules upon a Rule 12(b)(2) motion based upon written materials without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In making its determination, the Court considers the written submissions from both parties but takes "as true all well-pleaded facts alleged in the complaint" and resolves "any factual disputes . . . in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

### III. Analysis

A federal district court sitting in diversity applies the personal jurisdiction rules of the forum state. *Webber v. Armslist* LLC, 70 F.4th 945, 953 (7th Cir. 2023) (citing *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015)). In this case, Illinois law supplies the relevant rules. The Illinois long-arm statute "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Tamburo*, 601 F.3d at 700; *see* 735 Ill. Comp. Stat. 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). Because the Seventh Circuit has found no "operative difference" between the two constitutional limits, *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 756–57 (7th Cir. 2010), the statutory and constitutional inquiries merge. Thus, the Court will

limit its analysis to whether the exercise of personal jurisdiction in this case remains consistent with the Due Process Clause.

The Due Process Clause permits the exercise of personal jurisdiction over an out-of-state defendant when the defendant possesses "minimum contacts" with the forum state such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). Stated differently, "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court there.'" *Tamburo*, 601 F.3d at 701 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Personal jurisdiction may be "general" or "specific." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Plaintiff contends that this Court can exercise both general and specific personal jurisdiction over Dhruv and Vivek. [18] at 12–15; [34] at 12–15.

This Court examines each basis of personal jurisdiction in turn.

## A. General Personal Jurisdiction

General jurisdiction exists where a defendant's contacts with the forum state are so "continuous and systematic" as to render him "at home" in the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). This standard demands a defendant have such extensive contacts because it allows that defendant to be sued for anything, even a claim that lacks any nexus to the state at all. *See uBID, Inc v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010).

Plaintiff asserts this Court has general jurisdiction because Dhruv and Vivek communicated with Plaintiff and Aldi USA via emails and phone calls regarding their products and arranged shipment of products to the forum state. [18] at 13–15; [34] at 13–15. But "only a limited set of affiliations with a forum" can make a defendant amenable to "all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Although the Supreme Court has left open the possibility of an exceptional case, *see also id.*, for an individual, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. By contrast, mere sporadic interactions with the forum state do not render a defendant at home there. *Tamburo*, 601 F.3d at 701–02 (holding the court had no general jurisdiction over defendants where they had only sporadic contact with Illinois); *James v. Lydon*, No. 19-cv-3366, 2020 WL 704795, at *2 (N.D. Ill. Feb. 11, 2020) (finding no general personal jurisdiction because each defendant "resides and is domiciled in a state other than Illinois, and none of them has had, at any relevant time, more than a sporadic presence in this state").

Here, it remains undisputed that Dhruv and Vivek are not domiciled in Illinois; Dhruv and Vivek reside in India. [1] ¶¶ 8, 9; [15] at 2; [26] at 2; *see also Johnson v. Melton Truck Lines, Inc.*, No. 14-cv-7858, 2016 WL 8711494, at *3 (N.D. Ill. Sept. 30, 2016) ("For the purposes of general jurisdiction, individual defendants are considered citizens of the state in which they reside with the intent to remain indefinitely."). And their alleged contacts with Illinois are far from being so continuous and systematic to render them "at home" here.

6

Instead, Dhruv and Vivek's contacts with Illinois are precisely the type of "sporadic" interactions for which general jurisdiction cannot be exercised. *See, e.g., Heritage Vintage Invs., LLC v. KMO Dev. Grp.*, No. 15-cv-5582, 2015 WL 12838162, at \*3 (N.D. Ill. Dec. 11, 2015) (finding no general jurisdiction where the individual defendant regularly conducted business in forum state, traveled there regularly, and invested in at least one project in the forum state, but did not maintain an office there, make a substantial part of business or personal decisions there, or keep a substantial amounts of assets there); *Melton Truck Lines*, 2016 WL 8711494, at \*3 (concluding that "a few phone calls and emails" were insufficient for general personal jurisdiction).

Accordingly, the Court finds Dhruv and Vivek are not subject to this Court's general jurisdiction and turns to the question of specific jurisdiction.

## B. Specific Personal Jurisdiction

Specific jurisdiction stems from the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). The exercise of specific jurisdiction requires: "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself to the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by and through Myer v. Samsung SDI Co.*, 91 F.4th 856,

7

861 (7th Cir. 2024) (first citing *Rogers v. City of Hobart,* 996 F.3d 812, 819 (7th Cir. 2021); and then citing *Tamburo*, 601 F.3d at 702).

Specific jurisdiction is claim-specific: the nature of the Court's purposeful-availment analysis depends upon the type of claim at issue. *See Felland*, 682 F.3d at 674. Here, the common-law fraud (Count III) and civil conspiracy (Count IV) claims against Dhruv and Vivek allege that they devised a "bait and switch" scheme to induce Plaintiff to place large orders with payment terms favorable to Fusion, and the acts in furtherance of that scheme comprise the fraud allegations.[2] Here, Defendants' relevant contacts overlap with the asserted claims.

**A. Dhruv and Vivek "Purposefully Directed" their Activities at Illinois**

Purposeful availment requires the defendant to have "certain minimum contacts" with the forum state, *Samsung SDI*, 91 F.4th at 861 (citing *Int'l Shoe*, 326 U.S. at 316)—contacts that demonstrate a real relationship with the forum state in relation to the conduct at issue, such that it is "reasonable for the defendant to anticipate" that he could be sued in court there. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Burger King,* 471 U.S. at 474). In cases of intentional torts, a plaintiff satisfies this requirement by showing: (1) intentional

---

[2] Under Illinois law, civil conspiracy requires: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017) (quoting *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017)). Common-law fraud requires: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Yash Venture Holdings, LLC v. Moca Fin. Inc,* No. 4:19-cv-4176-SLD-JEH, 2020 WL 7345655, at *12 (C.D. Ill. Dec. 14, 2020) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)).

conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state (3) that the defendant knew would cause injury to a plaintiff in the forum state. *Felland*, 682 F.3d at 674–75 (quoting *Tamburo*, 601 F.3d at 703); *see generally Calder v. Jones*, 465 U.S. 783 (1984) (discussing purposeful availment in the context of a tort case).

The first and third requirements are easily met. Plaintiff claims Vivek and Dhruv shipped samples and goods to Illinois and routinely contacted Plaintiff's agents in Illinois concerning the goods through emails and conference calls scheduled on "Chicago" time. [18] at 7–8; [34] at 7–8.

The contacts underlying the fraud and civil conspiracy claims, as alleged, are plainly intentional. *See, e.g.,* [1] ¶¶ 66–69, 73–77. Plaintiff alleges that Dhruv and Vivek made various false representations and statements of fact to it in order to induce Plaintiff to place large orders with Fusion and to secure more favorable payment terms. *See id.* Plaintiff further alleges that at the time such misrepresentations were made, "Vivek and Dhruv knew" they were false, and "intended" for Plaintiff's representatives to rely upon them as part of their "bait and switch" scheme. *Id.* ¶ 68–69. Dhruv and Vivek also knew they contracted to deliver products to Batavia, Illinois on behalf of Fresh Source, an Illinois company, who supplied products to Aldi USA, another Illinois company, making it clear that their actions would be "felt" in Illinois. *See* [1] ¶ 2; [18] at 11; [34] at 11.

Vivek and Dhruv's contacts were also "expressly" aimed at the state of Illinois. *Felland v. Clifton* provides a helpful analogy. 682 F.3d 665. In *Felland*, the plaintiff

9

entered into a contract with a defendant to purchase a condominium unit and sought reassurances from the defendant that the unit would be delivered on schedule. *Id.* at 669. To ensure that the plaintiff would continue making payments, the defendant made misrepresentations to the plaintiff via email, phone calls, and letters, to "lull" him into a false sense of security. *Id.* at 669–70. The court held these intentional and fraudulent misrepresentations by defendant constituted relevant conduct "expressly aimed" at the forum state and constituted conduct "purposefully directed" at the forum state for the purposes of the plaintiff's fraud claims. *Id.*

Here, as in *Felland*, Dhruv and Vivek directed both their written and verbal misrepresentations to the forum state and shipped misleading teaser products to the forum state to secure large orders and favorable payment terms. Such "lulling communications" made by Dhruv and Vivek included false assurances to Plaintiff of Fusion's "management, oversight, and controlling" of Plaintiff's orders. [1] ¶ 67(d). Like the misleading statements in *Felland*, these statements and shipments induced Plaintiff to continue to place large orders with Fusion and to commit to new payment terms that resulted in damages in excess of $75,000 to Plaintiff. *Id.* ¶¶ 69–71. Based upon these contacts, Dhruv and Vivek should reasonably have anticipated being brought into court in Illinois.

**B. Dhruv and Vivek's Contacts "Relate to" the Plaintiff's Claims**

Having determined that Dhruv and Vivek had sufficient minimum contacts with Illinois, the Court next considers whether each defendant's minimum contacts with the forum state are suit-related; that is, whether they "arise out of or relate to"

the claims against them. *Samsung SDI*, 91 F.4th at 861–62 (citing *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020)). Here, they do.

Recently, the Supreme Court clarified that "a defendant's contacts with the forum may 'relate to' the plaintiff's claims even in the absence of a 'strict causal relationship' between the contacts and claims." *See id.* at 861–62 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). Rather, due process requires only that the "relationship among the defendant, the forum[s], and the litigation" remain "close enough to support specific jurisdiction." *Id.* (alteration in original) (quoting *Ford*, 592 U.S. at 471). Stated differently, the conduct comprising the "minimum contacts" and the "litigation" must be related. *Id.* at 861–62.

Here, Plaintiff sues Dhruv and Vivek for common-law fraud and civil conspiracy to commit fraud. As discussed above, the relevant contacts with the forum are the alleged (1) fraudulent written and verbal communications through emails and conference calls to Illinois; and (2) the fraudulent and unrepresentative samples shipped to Illinois. These contacts, *i.e.,* Dhruv and Vivek's activities directed at Illinois, sufficiently relate to Plaintiff's fraud and conspiracy claims to support the exercise of personal jurisdiction.

Moreover, while not required, the Complaint also alleges a degree of a causal relationship: Plaintiff relied upon Dhruv and Vivek's false representations to its detriment, and as a result, Plaintiff's key retail client, Aldi USA, cancelled its orders, and eventually terminated its business relationship with Plaintiff altogether, thus causing Plaintiff's losses. *See* [1] ¶¶ 56, 59; [1-4] (indicating that Aldi was

11

terminating its business relationship with Plaintiff due to it delivering poor quality products); *see also Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 912–13 (N.D. Ill. 2002) (holding plaintiff's injury arose out of or related to defendant's contacts with Illinois, where defendant made a phone call directed to plaintiff, an Illinois company in Illinois as part of a scheme to defraud that led to the unlawful acquisition of confidential information and injured the plaintiff).

Therefore, the relationship between the Defendant's contacts, the state of Illinois, and this lawsuit, is "close enough" to support the exercise of specific jurisdiction.

## C. The Exercise of Specific Jurisdiction Over Dhruv and Vivek in Illinois Remains "Fair"

Lastly, the Court considers whether the exercise of personal jurisdiction over Dhruv and Vivek comports with "traditional notions of fair play and substantial justice." *See Int'l* Shoe, 326 U.S. at 316. In considering fairness, the Court looks to several factors, including: "the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy." *Samsung SDI*, 91 F.4th at 862 (citing *Burger King*, 471 U.S. at 477). Where "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction," however, he "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

12

Applying these factors, the Court finds that permitting this suit to proceed against Dhruv and Vivek in Illinois remains fair. First, Illinois has a strong interest in "assuring adequate remedial relief for its citizens who have been injured" by foreign actors. *See Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992); *see also Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Dhruv and Vivek's alleged fraudulent actions were directed at an Illinois company that principally operates out of Illinois and contracts with Illinois businesses, including Aldi USA. Thus, Illinois' interest in regulating this conduct and providing a forum for its injured residents remains substantial.

Although the Court acknowledges the burden placed upon Dhruv and Vivek as residents of India who must litigate in a foreign forum, *see Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987), "out-of-state defendants *always* face such a burden." *Felland*, 682 F.3d at 677. In addition, modern transportation and technology has rendered it far "less burdensome for a party to defend itself in a state where he derives economic benefits," and therefore it usually "will not be unfair to subject him to the burdens of litigating in another forum." *Monster Energy Co. v. Wensheng*, 136 F.Supp.3d 897, 909 (N.D. Ill. 2015). Indeed, Dhruv and Vivek have already obtained counsel to engage in motion practice in Illinois since this lawsuit was filed. By contrast, it would be unreasonable to expect Plaintiff to litigate its claims outside of Illinois in India, a forum having less connection to or interest in the claims against Dhruv and Vivek.

13

Moreover, Illinois would undeniably be the most efficient forum state to resolve the claims against Dhruv and Vivek. The underlying conduct giving rise to many of these claims was directed at or occurred within Illinois' borders, and, additionally, the main non-party actor involved which possesses relevant information, Aldi USA, maintains its headquarters in the state of Illinois. Finally, Dhruv and Vivek's fraudulent communications and shipments were "intentional misrepresentations directed at the forum state that caused the harm felt by residents there." *Felland*, 682 F.3d at 678. Therefore, the exercise of personal jurisdiction over Dhruv and Vivek comports with traditional notions of fair play and substantial justice.

## IV. Conclusion

For the reasons explained above, the Court denies both Dhruv Bhatnagar's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, [15], and Vivek Bhatnagar's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, [26]. Defendants shall answer the Complaint within 30 days of entry of this order. Additionally, the parties shall file a joint status report within 45 days of the entry of this order, proposing a reasonable fact-discovery deadline, indicating whether they will require expert discovery, and indicating whether they are interested in a settlement conference. This Court will set additional case management deadlines in a future order.

Dated: March 17, 2026

Entered:

John Robert Blakey
United States District Judge

14